UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

|  |  |
|---|---|
| KRISTEENA SCARPINO<br>individually and on behalf<br>of similarly situated individuals,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>IMAGINATION INDUSTRIES, INC., d/b/a<br>AMERICAN DREAM<br>and CASEY ROWE,<br><br>　　　　　Defendants. | CLASS AND COLLECTIVE<br>ACTION COMPLAINT<br><br>C.A No. 8:20-cv-449 |

1.　　Plaintiff Kristeena Scarpino ("Plaintiff" or "Scarpino") brings this class and collective action behalf of herself and all other exotic dancers who have worked at Imaginatio Industries, Inc. d/b/a American Dream ("American Dream") which is, upon information and belief, owned by Defendant Casey Rowe. Plaintiff brings this case under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA") and the Nebraska Wage and Hour Act, Neb. Rev. Stat. §48-1201 *et seq.,* on behalf of herself and others similarly situated. Plaintiff alleges that Defendants have misclassified exotic dancers working at American Dream as independent contractors rather than employees, have failed to pay them minimum wage compensation, and have required dancers to pay fees and tip-outs, which constitute unlawful kick-backs under the FLSA.

## PARTIES

2.　　Plaintiff Kristeena Scarpino ("Scarpino") is a resident of Omaha, Nebraska. Grove has worked as an exotic dancer at American Dream from approximately 2011 until October 2020. During this time, she was classified as an independent contractor.

3.　　Defendant Imagination Industries, Inc., d/b/a American Dream ("American

1

Dream") is an establishment where live nude dance entertainment is presented to adult members of the general public. American Dream is located at 7402 F Street, Omaha, Nebraska.

4. Defendant Casey Rowe is the owner-operator of American Dream. He directs the operations of American Dream's business, supervises and sets rules for Plaintiff and other exotic dancers working at American Dream and is directly involved in American Dream's payroll and employee classification decisions.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction under 29 U.S.C. § 201 et seq. (Fair Labor Standards Act) and 28 USC § 1331 (federal question).

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant 28 U.S.C. § 1367(a), because these claims are so related to the federal claims that they form part of the same case and controversy.

7. Venue is proper in the District of Nebraska because the Defendants are located in Omaha, Nebraska, in this judicial district, and because the events giving rise to the Complaint took place in Omaha, Nebraska, in this judicial district.

8. The Court has personal jurisdiction over Defendant Casey Rowe since Defendant Harrington resides in Omaha, Nebraska, in this judicial district, and since his work as owner of American Dream has taken place in Omaha, Nebraska, in this judicial district.

9. Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

7. Defendants' annual gross volume of sales made or business done exceeds $500,000.

## CLASS DEFINITIONS

8. Plaintiff brings this action individually and as an opt-in, collective action pursuant to 29 U.S.C. § 216(b), on behalf of a class of all individuals who worked as exotic dancers at

American Dream at any time within the three years prior to joining this lawsuit, who were misclassified as independent contractors and who were not paid minimum wage compensation as required by the Fair Labor Standards Act, and were subject to unlawful kick-backs under the FLSA.

9. Plaintiff also brings this action individually and as a class action on behalf of a class of individuals who worked as exotic dancers at American Dream at any time within the three years prior to the filing of this lawsuit, who were misclassified as independent contractors and who were not paid minimum wage compensation as required by the Nebraska Wage and Hour Act, Neb. Rev. Stat. §48-1201 *et seq.*

**FACTUAL ALLEGATIONS**

10. Plaintiff and other exotic dancers who worked at American Dream performed dances on stage and private dances for Defendants' customers.

11. There were between 15-20 exotic dancers working at American Dream on any given night.

12. Plaintiff and other exotic dancers were required to schedule their shifts in advance. Plaintiff and other dancers were fined $50 for missing a scheduled shift, and had to pay $50 if they came in to work on a night when they were not on the schedule.

13. Plaintiff typically worked 4-5 shifts a week, from 9 PM to 2 AM.

14. Plaintiff and other dancers had to pay a $50 fee to American Dream for leaving a scheduled shift early.

15. Plaintiff and other exotic dancers were required to pay $20-$50 in house fees each night; they were required to pay an additional $20 for every half hour they were late for their scheduled shift.

16. Plaintiff and other exotic dancers at American Dream were required to go up on stage at regular intervals during their scheduled shifts, and perform a set of 2-4 songs. The

dancers had to pay a fine of $10 to American Dream for each stage set they missed.

17. Plaintiff and other exotic dancers had to follow various rules set by American Dream. For example, American Dream required dancers to keep their hair and clothes clean and fresh; prohibited dancers from using body oil; and allowed only two dancers a t a time to take a break during their shifts.

18. Plaintiff and other exotic dancers did not receive any wages from American Dream. Instead, all their compensation came in the form of tips paid by customers for dances. American Dream set the prices customers were required to pay for dances, and determined the portion of the pay which Plaintiff and other dancers could keep.

19. Plaintiff and other exotic dancers were required to "tip out" the DJ each night. American Dreams required a $10 minimum tip-out if a dancer had 0-10 dances private dances for the night; $15 for 11-19 dances, and $20 for 20 or more dances.

20. If Plaintiff and other dancers failed to tip out the DJ, American Dream required them to pay a $10 fine.

21. Defendants required Plaintiff and other exotic dancers to perform various chores at American Dream.

22. Plaintiff and other exotic dancers were subject to discipline, including termination, suspension, and fines if they failed to follow the rules and regulations set forth by American Dream, its owners, operators and managers.

23. The work performed by Plaintiff and other exotic dancers – namely, adult, exotic entertainment – was central to American Dream's business as a nightclub providing adult live dancing entertainment.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

24. Plaintiff brings Counts I-II of this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

25. Plaintiff desires to pursue her FLSA claims on behalf of all individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

26. Plaintiff and the FLSA Collective Members are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals have been subject to Defendants' common business and compensation practices as described herein, and, as a result of such practices, have not been paid the legally mandated minimum wage compensation and were required to pay unlawful kickbacks to Defendants. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common misclassification, compensation and payroll practices.

27. The FLSA requires non-exempt hourly employees to be paid minimum wage for all hours worked.

28. Defendants misclassified Plaintiff and FLSA Collective Members as independent contractors, failed to provide them minimum wage compensation as required by the FLSA, and required them to pay unlawful kickbacks in violation of the FLSA.

29. The similarly situated employees are known to Defendants, are readily identifiable, and can easily be located through Defendants' business records.

30. During the relevant time period, Defendants have employed dozens of FLSA Collective Members. These similarly situated employees may be readily notified of this action through U.S. Mail and/or other means, and allowed to opt in to this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for minimum wage and overtime

compensation, unlawful kickbacks, liquidated damages (or, alternatively, interest) and attorneys' fees and costs under the FLSA.

## NEBRASKA CLASS ACTION ALLEGATIONS

31. Plaintiff brings Count III of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the Nebraska Class defined above.

32. The members of the Nebraska Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Nebraska Class.

33. Plaintiff will fairly and adequately represent and protect the interests of the Nebraska Class because there is no conflict between the claims of Plaintiff and those of the Nebraska Class, and Plaintiff's claims are typical of the claims of the Nebraska Class. Plaintiff's Counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

34. There are questions of law and fact common to the proposed Nebraska Class, which predominate over any questions affecting only individual Class Members, including, without limitation, whether Defendants have violated and continue to violate Nebraska law through their policy or practice of classifying exotic dancers as independent contractors and failing to pay them minimum wage.

35. Plaintiff's claims are typical of the claims of the Nebraska Class Members in the following ways, without limitation: (a) Plaintiff is a member of the Nebraska Class; (b) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Nebraska Class; (c) Plaintiff's claims are based on the same legal and remedial theories as those of the Nebraska Class and involve similar factual circumstances; (d)

there are no conflicts between the interests of Plaintiff and the Nebraska Class Members; and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by the Nebraska Class Members.

36. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Nebraska Class predominate over any questions affecting only individual Class Members.

37. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Nebraska Class Members are readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the Nebraska Class would create the risk of inconsistent or varying adjudications with respect to individual Nebraska Class Members that would establish incompatible standards of conduct for Defendants.

38. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Nebraska Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

39. Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff and the Nebraska Class. Plaintiff envisions no

difficulty in the management of this action as a class action.

## CLAIM FOR RELIEF

### Count I:  Minimum Wage under the FLSA

41. Plaintiff incorporates by reference the previous paragraphs of the Complaint.

42. Pursuant to 29 USC § 206, an employer must pay employees at least the minimum wage for all hours worked.

43. The Defendants failed to pay Plaintiff and collective action members the minimum wage as required by 29 U.S.C. § 206.

44. Defendants' misclassification of dancers as independent contractors when they were really employees was knowing, willful, and intentional.

### Count II:  Unlawful Kickbacks under the FLSA

45. Plaintiff incorporates by reference the previous paragraphs of the Complaint.

The house fees and mandatory tip-outs that Defendants required from Plaintiff and the members of the collective constitute unlawful "kick-backs" to an employer under the FLSA, 29 U.S.C. § 203(m).

46. 29 U.S.C. § 203(m)(2) provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

47. The unlawful kickbacks received or required by Defendants were obtained knowingly, willfully, intentionally, or in bad faith.

48. Plaintiff and the members of the collective are entitled to an award of back pay for all unlawful kickbacks required by Defendants.

### Count III:  Violation of the Nebraska Wage and Hour Act

49. Plaintiff incorporates by reference the previous paragraphs of the Complaint.

50. The Nebraska Wage and Hour Act, Neb. Rev. Stat. §48-1201 *et seq.,* requires employers to pay minimum wage compensation for employees for all hours worked.

51. During all relevant times, Plaintiff and other exotic dancers were employees of American Dream within the meaning of Neb. Rev. Stat. §48-1202.

52. During all relevant times, Defendants were employers within the meaning of Neb. Rev. Stat. §48-1202.

53. Plaintiff and other exotic dancers are entitled to recover their unpaid minimum wage compensation as well as attorneys' fees and costs pursuant to Neb. Rev. Stat. §48-1203 and Neb. Rev. Stat. §48-1206.

**WHEREFORE**, Plaintiff requests that the Court enter the following relief:

a. An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential members of the FLSA Collective;

c. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Nebraska Class;

d. An order appointing Plaintiff's attorneys as Class Counsel;

e. An award of monetary damages to Plaintiff and Class and Collective Action Members in the form of back pay for unpaid minimum wages and overtime compensation, reimbursement of all unlawful withholdings from Plaintiff's and the Class and Collective Action Members' wages, together with liquidated damages;

f. Attorneys' fees and costs; and

g. Such further relief as the Court deems just and proper.

        Respectfully submitted,


        By: */s/ Harold Lichten*
        Harold L. Lichten
        Olena Savytska
        LICHTEN & LISS-RIORDAN, P.C.
        729 Boylston Street, Suite 2000
        Boston, MA 02116
        (617) 994-5800
        hlichten@llrlaw.com
        osavytska@llrlaw.com


        *Attorneys for Plaintiff*
        *and the Proposed Class and Collective*


Dated:        October 26th, 2020