IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KRISTEENA SCARPINO, individually and on behalf of similarly situated individuals;<br><br>Plaintiff,<br><br>vs.<br><br>IMAGINATION INDUSTRIES, INC. d/b/a American Dream, and CASEY ROWE,<br><br>Defendants. | **8:20CV449**<br><br>**FINDINGS AND RECOMMENDATION** |

The plaintiff, an exotic dancer, alleges on behalf of herself and others similarly situated, that Defendants misclassified dancers as independent contractors rather than as employees, failed to pay minimum wage and overtime wages, and required dancers to pay unlawful kickbacks in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. 201 *et seq.,* and the Nebraska Wage and Hour Act ("NWHA"), *et seq.* (Filing No. 21). Plaintiff's Complaint alleges a claim under federal law, and this court has original jurisdiction under 28 U.S.C.A. § 1331.

Pending before the court are Defendant Casey Rowe's motion to dismiss (Filing No. 11), Defendant Imagination Industries, Inc., d/b/a/ American Dream's ("American Dream") motion to dismiss (Filing No. 12), and Plaintiff Kristeena Scarpino's Motion for Conditional Class Certification (Filing No. 15). For the following reasons, the motions to dismiss should be denied, and the motion for conditional class certification should be granted.

BACKGROUND

1

I.    Procedural History

Plaintiff filed her original complaint on October 26, 2020, alleging Defendants Casey Rowe and Defendant American Dream violated the FLSA and NWHA. (Filing No. 1). Defendants filed motions to dismiss on January 25, 2021. (Filing Nos. 11, 12). Plaintiff filed a motion for conditional class certification on January 27, 2021. (Filing No. 15). American Dream filed a motion to strike Plaintiff's complaint on February 2, 2021, and Plaintiff filed an amended complaint the next day, resolving the defects American Dream raised in its motion to strike. (Filing Nos. 20 and 21). The undersigned magistrate judge found that Filing Nos. 11 and 12 were not mooted by the filing of the amended complaint. Filing No. 11 and Filing No. 12 are deemed Rule 12(b)(6) motions challenging the amended complaint, Filing No. 21.

II.   Facts

Plaintiff's Amended Complaint (Filing No. 21) alleges the following facts:

Plaintiff is a resident of Omaha, Nebraska and worked as an exotic dancer at American Dream from approximately 2011 until October 2020. Defendant American Dream is located in Omaha and is a club which features live nude dance entertainment. Defendant Casey Rowe is the owner of American Dream, and he is present and involved in the day to day operation of the club and management of the dancers, payroll, and employee classification decisions.

Plaintiff brings this action individually and as an opt-in collective action pursuant to 29 U.S.C. § 216(b). Plaintiff seeks classification of a conditional collective class consisting of "all exotic dancers who have worked at American Dream during the last three years and were classified as independent contractors."

(Filing No. 16 at CM/ECF p. 18). She asserts she and the other dancers at American Dream were misclassified as independent contractors and were not paid the appropriate minimum wage compensation as required by the FLSA and the NWHA. In addition, she alleges the dancers were required to pay unlawful kickbacks in violation of the FLSA.

In support of her allegation that she and the other potential plaintiffs were employees, she alleges they were all subject to rules and policies set by American Dream. Dancers were required to pay house fees, late fees, fees for missing scheduled shifts, fees for leaving shifts early, and fees for failing to complete a stage set of 2-4 songs. They were also required to "tip-out" the DJ based on the number of private dances they performed per night and there were fines imposed for failing to make the tip-outs. Plaintiff and the other dancers were required to follow American Dream's rules regarding the dancers' appearance, use of body oil, and when dancers could take breaks. American Dream set the prices for private dances and determined the portion of the payment that dancers could keep. The dancers did not receive wages from American Dream. Their compensation came in the form of tips paid by customers for dances. Dancers were subject to discipline, including termination, suspension, and fines if they failed to follow rules and regulations set by Defendants.

## MOTIONS TO DISMISS

I.    Standard

A Rule 12(b)(6) motion tests whether the complaint "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under the Federal Rules, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, (2007). "Specific facts are not necessary; the statement need only

'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Twombly, 550 U.S. at 555.) In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Cole v. Homier Dist. Co. Inc., 599 F.3d 856, 861 (8th Cir. 2010).

II.     Analysis

A.     Applicability of the FLSA

The FLSA provides for two types of coverage: (1) enterprise coverage under 29 U.S.C. § 203(s)(1)(a), and (2) individual employee coverage under 29 U.S.C § 206(a)(1). Defendants both contend the Complaint "does not identify any activities or actions taken by Plaintiff or its purported or prospective class members that would expose American Dream to individual and/or enterprise coverage within the meaning of the applicable FLSA statute." (Filing No. 11 at CM/ECF p. 4, Filing No. 12 at CM/ECF p. 3). They argue that because American Dream is not an "employer" under the FLSA, both American Dream and Casey Rowe are relieved of any liability to Plaintiff and any purported class members.

In support of their position, Defendants allege:

[T]he Nebraska Supreme Court has previously ruled that an exotic dancer who performs at a nightclub is not engaging in commerce for the purposes of the Federal Labor Standards Act (FLSA) (or the Nebraska Wage and Payment and Collection Act (NWPCA)) because he or she is not engaged in the production of goods in commerce, is not directly participating in the actual movement of persons or things in interstate commerce either by working for an instrumentality of interstate commerce or regularly using the instrumentalities of interstate commerce in his or her work, is not crossing state lines in

4

connection with employment, handling goods directly moving in the channels of interstate commerce, or directly contributing to the repair or extension of facilities of interstate commerce; and purely local interactions with out-of-state individuals is not an interstate activity.

Filing No. 11 at CM/ECF p. 5, Filing No. 12 at CM/ECF p. 4, referring to Mays v. Midnite Dreams, Inc., 300 Neb. 485, 501 (2018).

However, in another similar case in this district, this court rejected an argument that the FLSA does not apply to exotic dancers in Nebraska. Specifically, Judge Bataillon noted:

The narrow holding in Mays, was based on the finding that the plaintiffs were employees entitled to a minimum wage under the NWHA, but there was no evidence that the plaintiffs were engaged in interstate commerce as individuals, so as to be covered by the FLSA, and no showing (or even an allegation that the employer's sales were high enough to trigger enterprise liability[)]. The case has no application to the circumstances of this case.

(8:20-cv-193, Grove et al v. Meltech et al, Filing No. 94 at CM/ECF p. 2. fn 1).

While it may be true that the plaintiff in Mays did not sufficiently prove that she was an employee under the FLSA, Mays cannot be read to mean that an exotic dancer in Nebraska is never entitled to coverage under the FLSA. Whether an exotic dancer is an employee within the meaning of the FLSA is a fact-specific inquiry, which other districts have addressed at summary judgment.[1] The

---

[1] See Clincy v. Galardi S. Enterprises, Inc., 808 F. Supp. 2d 1326, 1350 (N.D. Ga. 2011) (finding that exotic dancers should have been classified as employees under the FLSA.); Reich v. Circle C. Invs., Inc., 998 F.2d 324, 330 (5th Cir. 1993) (affirming finding that dancers are "employees" covered by the FLSA and that the club owner is an "employer" within the meaning of the FLSA); Foster v. Gold & Silver Priv. Club, Inc., No. 7:14CV00698, 2015 WL 8489998, at *5 (W.D. Va. Dec. 9, 2015) (noting that courts have consistently found exotic dancers to be employees under the FLSA despite the commonly transient nature of the industry;  see also Thompson v. Linda And A., Inc., 779 F. Supp. 2d 139, 148 (D.D.C. 2011) (collecting cases); Morse v. Mer Corp., No. 1:08–cv–1389, 2010 WL 2346334 (S.D.Ind.2010) (granting summary

appropriate inquiry on the pending motions is whether the Plaintiff has stated a claim upon which relief can be granted.

      i.     Enterprise Coverage

The FLSA provides that "every employer shall pay to each of his employees who . . . is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce" a minimum wage. 29 U.S.C. § 206(a). An enterprise engaged in commerce or in the production of goods for commerce means an enterprise that:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated);

29 U.S.C.A. § 203.

The Amended Complaint alleges Defendants' annual gross volume of sales made or business done exceeds $500,000. Additionally, the Amended Complaint alleges Rowe and American Dream:

> employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce, as required by 29 U.S.C. §§ 206-207. Specifically, the

---

judgment that exotic dancers were "employees" under FLSA); Reich v. Priba Corp., 890 F.Supp. 586 (N.D.Tex.1995) (finding exotic dancers to be "employees" under FLSA).

dancers working at American Dream provide entertainment to out-of-state customers. In addition, the services of Plaintiff and other exotic dancers are regularly advertised on Facebook[2].

(Filing No. 21 at CM/ECF p. 2 ¶ 9).

Defendants assert that Plaintiff has not alleged they are an enterprise meeting both prongs of 203(s)(1)(A). Specifically, Defendants dispute Plaintiff's allegation that American Dream's gross volume of sales exceeds $500,000, citing cases where summary judgment was granted in favor of the employer. However, the pending motion is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6),[3] and at this stage of the proceeding the court does not weigh evidence and make factual determinations.

For the purposes of the minimum wage claim under the FLSA, Plaintiff asserts she and other purported class members were misclassified as independent contractors instead of as employees and they were not paid the minimum wage that they were due. Accepting the allegations in the complaint as true for the purposes of examining Defendants' 12(b)(6) motion, Plaintiff has stated a claim for enterprise coverage under the FLSA.

ii.     Individual coverage

---

[2] Courts within the Eighth Circuit have found FLSA coverage exists for dancers who "regularly use the instrumentalities of interstate commerce," such as the internet, in their work. Miller v. Centerfold Ent. Club, Inc., No. 6:14-CV-6074, 2017 WL 3425887, at *3 (W.D. Ark. Aug. 9, 2017) citing Thorne v. All Restoration Servs., 448 F.3d 1264, 1266 (11th Cir. 2006). see also United States v. Hornaday, 392 F.3d 1306, 1311 (11th Cir. 2004) ("The internet is an instrumentality of interstate commerce.").

[3] Defendant Rowe asserts his motion is also a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1), but the subject matter jurisdiction argument in his brief is purely based upon his assertion that he is exempt from liability because he is a corporate officer of American Dream. This argument will be addressed in full, below. Further, courts in this circuit have denied Rule 12(b)(1) motions to dismiss because enterprise coverage under the FLSA is an element of a plaintiff's claim for relief, not a jurisdictional threshold. O'Quinn v. Country Inn, Inc., No. 6:18-CV-06025, 2018 WL 3381421, at *3 (W.D. Ark. July 11, 2018) citing Rodriguez v. Diego's Rest., Inc., 619 F. Supp. 2d 1345, 1350 (S.D. Fla. 2009).

The FLSA also provides "coverage for 'employees who [are] themselves engaged in commerce or in the production of goods for commerce.'" Reich v. Stewart, 121 F.3d 400, 405 (8th Cir. 1997) (quoting Brennan v. Arnheim & Neely, Inc., 410 U.S. 512, 517 (1973)). "For individual coverage, '[t]he burden of proof lies on employees to establish that they were engaged in interstate commerce, or in the production of goods, and that such production was for interstate commerce.'" Miller v. Centerfold Ent. Club, Inc., No. 6:14-CV-6074, 2017 WL 3425887, at *3 (W.D. Ark. Aug. 9, 2017) (quoting Joseph v. Nichell's Caribbean Cuisine, Inc., 862 F. Supp. 2d 1309, 1312 (S.D. Fla. 2012)).

Defendants assert Plaintiff has failed to allege facts that establish individual coverage under the FLSA. Specifically, Defendants argue Plaintiff's allegation that the dancers were advertised on Facebook and her argument that streaming music services were used during the dancers' sets are not sufficient to demonstrate that Plaintiff and other potential plaintiffs were engaged in interstate commerce. At this stage, the question remains whether Plaintiff has alleged sufficient facts regarding individual coverage to survive dismissal. "Several district courts in this district have been reluctant to grant motions to dismiss as to individual coverage before the parties have had an opportunity to engage in discovery." O'Quinn v. Country Inn, Inc., No. 6:18-CV-06025, 2018 WL 3381421, at *4 (W.D. Ark. July 11, 2018) See, e.g., Chavez v. Montes, 91 F. Supp. 3d 1091, 1093 (W.D. Ark. 2015) (denying motion to dismiss because "[d]etailed facts concerning the characterization of Plaintiff's role ..., her precise job description and daily duties ... may be uncovered in the course of discovery); Case v. Gabriele Crane Rental, Inc., No. 2:08-CV-04197-SOW, 2008 WL 11409423, at *1 (W.D. Mo. Dec. 15, 2008) ("The determination of whether or not ... individual coverage exists is more appropriate for the summary judgment stage of litigation, after the parties have had the opportunity to engage in further discovery.").

8

Discovery may yield additional facts regarding the nature and extent of Plaintiff's job duties at American Dream. Upon consideration, I recommend Defendants' motion to dismiss Plaintiff's claims regarding the applicability of individual FLSA coverage be denied at this time.

### B. Unlawful Kickbacks under the FLSA

Plaintiff alleges that the house fees and mandatory tip-outs Plaintiff and other dancers were required to pay constitute unlawful "kickbacks" to an employer under 29 U.S.C. 203(m). Section 203(m)(2)(B) states "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

American Dream alleges the complaint should be dismissed because Plaintiff has not joined "necessary" parties, including but not limited to all of the tip-pool or tip-out beneficiaries or recipients. (Filing No. 12 at CM/ECF p. 7). Employees and other alleged independent contractors of American Dream are not necessary parties because complete relief can be accorded "among those already parties" to this case. Yates v. Applied Performance Techs., Inc., 209 F.R.D. 143, 149 (S.D. Ohio 2002), citing Sales v. Marshall, 873 F.2d 115, 121 (6th Cir.1989) As will be discussed in more detail, below, corporate officers and the corporation itself are "jointly and severally liable under the FLSA for unpaid wages." Yates at 149. American Dream does not allege that these tip-pool or tip-out beneficiaries are employers subject to liability under the FLSA, thus complete relief is available from the named defendants.

American Dream alleges that the unlawful kickback claim should be dismissed because Plaintiff did not assert that American Dream kept tips. The plain language of 29 U.S.C. 203(m)(2)(B) states that it is not necessary that American Dream keep a portion of the tips (although Plaintiff alleges the house fees paid to American Dream are "unlawful 'kick-backs'" under 29 U.S.C. 203(m)). See Filing No. 21 at CM/ECF p. 8). Rather, it is enough to allege that American Dream's policies require Plaintiff and other dancers to pay a portion of their tips to other, non-tipped, employees such as managers and supervisors. Assuming as true the allegations that dancers are not paid a wage and earned compensation only in the forms of tips paid by customers for dancers, then any house fees, late fees, fines for failing to dance on stage, and mandatory tip-outs would necessarily be paid out of the dancers' tips. On its face, Plaintiff's Amended Complaint states a claim against Defendants because the business' fee policies allegedly violate the FLSA. Therefore, this portion of the complaint should not be dismissed.

### C. NWHA

Plaintiff alleges she and other similarly situated dancers are entitled to minimum wage compensation as employees defined by the Nebraska Wage and Hour Act.

Defendants assert each of the claims against them should be dismissed, but their briefs do not address the claim for violation of the Nebraska Wage and Hour Act. American Dream's brief asserts the FLSA claim should be dismissed and the "Court should grant leave for American Dream to file a notice of transfer and move this case to State District Court to resolve the remaining state law claim." (Filing No. 12 at CM/ECF p. 11). Since I recommend that the FLSA claims not be dismissed, I find no basis for abdicating to the state court the responsibility of resolving the parallel NWHA claim.

D.  Dismissal of Potential Opt-In Class Plaintiffs

American Dream asserts the complaint should be dismissed as to any dancers who earned more than the minimum wage or who have not worked as independent contractors in the last three years. (Filing No. 12 at CM/ECF p.  10). American Dream asserts the complaint does not allege that Plaintiff or any other purported class members were continuously employed during the relevant time periods from 2018 to 2020. (Id. at 10). Further, American Dream argues that the claims of employees who made more than the minimum wage and/or who lacked a business relationship with American Dream in the last three years should be barred.[4]

The appropriate statute of limitations and the potential scope of damages for opt-in plaintiffs goes to the merits of the case and will be considered by the District Judge, as appropriate, during the decertification phase of a conditional collective action. See, generally, Lopez v. Tyson Foods, No. 8:06CV459, 2008 WL 3485289, at *8 (D. Neb. Aug. 7, 2008) (At this stage, "[t]he court does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties at this initial stage." Burch v. Qwest Commc'ns Int'l, Inc., 500 F.Supp.2d 1181, 1186 (D.Minn.2007) (citation omitted). At this juncture during the pleading stage, dismissing potential plaintiffs before they have opted in is premature.

E.  Casey Rowe

---

[4] Plaintiff's motion for class certification limits the potential class of opt-in plaintiffs to "All exotic dancers who have worked at American Dream during the last three years and were classified as independent contractors."

Casey Rowe asserts he should be dismissed from this case because the acts alleged were official acts, which he carried out as a corporate officer of American Dream. He asserts he is shielded from liability unless there is a reasonable, good faith basis to pierce the corporate veil. He contends the court should dismiss this action under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), because (a) the complaint does not assert privity of contract between Plaintiffs and Casey Rowe in his individual capacity; (b) the acts complained of refer to official acts on behalf of American Dream; and (c) American Dream is the alleged employer for purposes of the FLSA and NWHA, thus there is no subject matter jurisdiction. Rowe's arguments regarding piercing the corporate veil and privity of contract are supported by cases citing contract law, but not FLSA or the NWHA. This is not a contract case.

Under the FLSA, an employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. 203(d). It is possible under the FLSA for more than one entity or individual to qualify as an employer in respect to specific employees. Solis v. Hill Country Farms, Inc., 808 F. Supp. 2d 1105, 1113 (S.D. Iowa 2011), aff'd, 469 F. App'x 498 (8th Cir. 2012); see also Falk v. Brennan, 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973) ("the FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA"). All entities qualifying as an employer are responsible for complying with the FLSA and subject to its remedies. Id.

The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer and along with the corporation, is jointly and severally liable under the FLSA for unpaid wages. Solis v. Hill Country Farms, Inc., 808 F. Supp. 2d at 1115, citing Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir.1983) (collecting cases). In Agnew, the

12

court determined that "corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of non-payment" were employers under the FLSA. Id., citing Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 965 (6th Cir. 1991).

> Here, Plaintiff's Amended Complaint alleges:
>
> Defendant Casey Rowe is the owner-operator of American Dream. Rowe is regularly present at American Dream during the dancers' shifts, and regularly communicates with Plaintiff and other dancers. He directs the operations of American Dream's business, supervises and sets rules for Plaintiff and other exotic dancers working at American Dream and is directly involved in American Dream's payroll and employee classification decisions.

Filing No. 21 at CM/ECF p. 2, ¶ 4. Based on this allegation, I find Plaintiff has adequately alleged that Rowe is an employer as defined by the FLSA. I therefore conclude that the claims against Rowe for violations of the minimum wage and unlawful kickback sections of the FLSA should not be dismissed.

## MOTION FOR CLASS CERTIFICATION

I.      Background

Plaintiffs seek classification of a conditional collective class consisting of "all exotic dancers who have worked at American Dream during the last three years and were classified as independent contractors . . ." (Filing No. 15). In support of her motion, she submits the declarations of herself and one other exotic dancer. See Filing No. 17-3, Exhibit C, Declaration of Kristeena Scarpino; Filing No. 17-4,

Exhibit D, Declaration of Tequitha Griffin. At the time her motion was filed, three dancers, including the plaintiff had filed opt-in consent forms. (See Filing Nos. 1, 7, 14).

In their declarations, the dancers state they were employed by American Dream, classified as independent contractors, required to work on certain days, required to schedule shifts in advance, required to work a certain number of hours and perform a certain number of dances per shift, and were fined if they failed to do so. The declarants also state they were not paid wages: They were compensated in the form of tips from customers and were required to tip the DJ at the end of each shift. The declarants state that American Dream set the rates of private dances and set rules for the dancers' appearance and conduct. The plaintiff submits a proposed notice and opt-in consent form. (Filing No. 17-1, Filing No. 17-2).

In opposition to the motion for class certification, the defendants submit the declaration of Defendant Casey Rowe, the "major stock holder" of American Dream. Defendants assert Plaintiff has not met the minimum legal or factual nexus to warrant conditional class certification. They argue the court should deny conditional certification or grant a stay of certification and permit limited discovery to determine whether Plaintiff is an appropriate lead plaintiff, whether the proposed class members are similarly situated, and whether the notice and consent forms are proper. (Filing No. 24 at CM/ECF p. 2).

II.    Conditional Certification

Section 216(b) of the FLSA allows named plaintiffs to sue "for and in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, "[n]o employee shall be a party plaintiff to any such action unless he

14

gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id. The sole consequence of conditional certification under 29 U.S.C. § 216 is the sending of court-approved written notice to employees who in turn become parties to a collective action only by filing written consent with the court. Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1043 (2016) (assuming, without deciding, that the standard for certifying a collective action under the FLSA is no more stringent than the standard for certifying a class under the Federal Rules of Civil Procedure). The court overseeing the action has discretion to authorize the sending of notice to potential plaintiffs, informing them of the opportunity to opt in. Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 170–71 (1989); see also Bigger v. Facebook, Inc., 947 F.3d 1043, 1046–47 (7th Cir. 2020). In the notice, the court must respect judicial neutrality and avoid even the appearance of endorsing the action's merits. Hoffman-La Roche, 493 U.S. at 174.

"The plaintiff bears the burden of establishing he or she is similarly situated to other members of the proposed class." Haworth v. New Prime, Inc., 448 F. Supp. 3d 1060, 1066 (W.D. Mo. 2020) (quoting Taylor v. Bear Commc'ns, LLC, No. 4:12-CV-01261-BCW, 2013 WL 3270971, at *2 (W.D. Mo. June 27, 2013) (citation omitted)). "Plaintiffs may be similarly situated when 'they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs.'" Bouaphakeo v. Tyson Foods, Inc., 765 F.3d 791, 796 (8th Cir. 2014)("Bouaphakeo I"), aff'd, 136 S. Ct. 1036 (2016) (quoting Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001)); see also Campbell v. City of Los Angeles, 903 F.3d 1090, 1117 (9th Cir. 2018) ("Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims."). To determine whether a class is similarly situated, "[a] court may consider '(1) disparate factual and employment settings of

15

the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.'" Bouaphakeo I, 765 F.3d at 796 (quoting Thiessen, 267 F.3d at 1103).

Although the Eighth Circuit has not articulated a standard for conditionally certifying FLSA classes, the majority of the district courts in the Eighth Circuit use the two-step analysis set out in Mooney v. Aramco Services Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003);  see also Haworth, 448 F. Supp. 3d at 1066; Kautsch v. Premier Commc'ns, 504 F. Supp. 2d 685, 688-89 (W.D. Mo. 2007)  (collecting cases).  "First, plaintiff moves for conditional certification at an early stage in the litigation, wherein a class is certified for notice purposes. Then, at the second step, defendants are allowed the opportunity to move for de-certification at the close of discovery." Davis v. NovaStar Mortg., Inc., 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005).

The plaintiff's motion for certification is typically filed at an early stage of the litigation thus requiring a lenient evaluation standard and typically resulting in conditional certification of a representative class.  Mooney, 54 F.3d at 1213-14; see also Grayson v. K Mart, 79 F.3d 1086, 1096 (11th Cir. 1996) (noting that the "similarly situated" standard is considerably less stringent than Rule 23(b)(3) class action standards); Del Toro v. Centene Mgmt. Co., LLC, No. 4:19-CV-02635-JAR, 2020 WL 2085650, at *2 (E.D. Mo. Apr. 30, 2020) (stating that at the first stage, conditional certification, courts typically apply a lenient standard); Borup v. CJS Sols. Grp., LLC, No. CV 18-1647 (PAM/DTS), 2020 WL 5988496, at *3 (D. Minn. Oct. 9, 2020) ("The plaintiffs' burden at the first stage is a light one."); Haworth, 448 F. Supp. 3d at 1066 (noting that the similarly-situated threshold requires only a modest factual showing).

16

"[C]onditional certification at the notice stage requires 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan.'" Davis, 408 F. Supp. 2d at 815 (quoting Vaszlavik v. Storage Tech. Corp., 175 F.R.D. 672, 678 (D. Colo. 1997). Nevertheless, the plaintiff "must still 'come forward with evidence establishing a colorable basis for their claim that the putative class members were together the victims of a single decision, policy, or plan[.]'" Borup, No. CV 18-1647 (PAM/DTS), 2020 WL 5988496, at *3 (quoting Thompson v. Speedway SuperAmerica LLC, No. 08-1107, 2009 WL 130069, at *5 (D. Minn. 2009)).

A showing that the plaintiffs and members of the proposed collective action opt-ins all work or have worked at a single location owned and operated by the defendant and were all subject to the same working conditions is sufficient for conditional certification. See, e.g., Degidio v. Crazy Horse Saloon and Rest., Inc., No. 4:13–cv–02136–BHH, 2015 WL 5834280, at *20 (D.S.C. Sept. 30, 2015) ("The record reveals that [dancers] are all classified as independent contractors.  None of them are paid wages. They are all subject to the same requirements regarding house fees" and "are all subject to the same or similar 'guidance' and 'suggestions' regarding their attire, discouraged behavior, and tip outs. In short, the defendant has a paradigm for how it does business and that paradigm does not appear to vary in any meaningful way with regard to individual members of the class.").  Any doubts in the notice stage should favor allowing conditional certification. Haworth, 448 F. Supp. 3d at 1066.

At the second step of the process, typically after the close of the opt-in period and discovery, the defendant may move to decertify the collective action if the record reveals that the opt-in plaintiffs are not similarly situated. Mooney, 54 F.3d at 1214. Renewed factual findings can then be made to determine whether the

17

'opt-in' plaintiffs are, in fact, similarly situated to the named Plaintiff. Gathmann-Landini, No. CV 15-6867 (JMA)(AYS), 2018 WL 3848922, at *9. If they are not, then "the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims." Id. (quoting Bifulco v. Mortgage Zone, Inc., 262 F.R.D. 209, 212 (E.D.N.Y. 2009)).

Based on the record in this case, the plaintiffs have provided enough factual support for their allegations that a class of similarly situated employees likely exists based on a potentially FLSA-violating policies that, if proven, would give rise to class-wide liability. See Bouaphakeo I, 765 F.3d at 796.  Specifically, plaintiffs offer sworn declarations that the plaintiffs and members of the proposed conditional collective action all work or have worked at a single location owned and operated by the defendants and were all subject to the same working conditions. The record shows that the dancers were all classified as independent contractors and were not paid wages. They all appear to be subject to the same or similar requirements regarding house fees, tip outs and rules of conduct and attire. American Dream's business practices do not appear to vary in any meaningful way between individual dancers.

Defendants argue that "[w]hile the standard for obtaining conditional certification and issuing notice may be lenient, it is not as lax as the Plaintiff purports . . .." (Filing No. 24 at CM/ECF p. 2). They assert the decisions or policies giving rise to this action are not the kinds of policies implied by the FLSA statutes. Defendants argue, for example, that rules requiring dancers not to violate laws and city ordinances, and rules setting safety and hygiene standards are not the type of policies which correlate to minimum wage or unlawful kickback violations under the FLSA. However, the allegations that American Dream required payment of house fees, late fees, penalties, and/or mandatory tip-outs *are* the types of

allegations which could give rise to claims under the FLSA, and the common claims among the declarants would weigh in favor of conditional certification.

Defendants also argue that certain dancers are not similarly situated because they may work infrequently, or DJs may negotiate the appropriate tip-out fee paid by a particular dancer. At this stage in the case, it is premature to examine the potential differences between the putative plaintiffs' individual circumstances. Defendant will have the opportunity to argue that Plaintiffs are not truly similarly situated if, after discovery is complete, they move to decertify the conditional class.

Defendants argue that the supporting evidence should "include evidence that other similarly situated individuals desire to opt into the litigation." (Filing No. 24 at CM/ECF p. 4). While it may be true in districts within the Eighth Circuit that "in order for a case to be appropriate for collective-action status under the FLSA, the Court must be satisfied that there are other employees who desire to opt in," plaintiff's burden is "not particularly onerous." Chin v. Tile Shop, LLC, 57 F. Supp. 3d 1075, 1090-1091 (D. Minn. 2014). Courts within the Eighth Circuit have not required a threshold percentage of opt-ins for conditional certification, and the existence of more than one or two plaintiffs in an FLSA case at the time of the conditional certification inquiry has been found sufficient to warrant collective-action treatment, even without a showing that other individuals wished to opt-in. Id., citing Lyons v. Ameriprise Fin., Inc., 2010 WL 3733565, at *4 (D.Minn. Sept. 20, 2010).

The instant motion involves only the first step of the collective class certification process, i.e., whether the proposed opt-in members are "similarly situated" such that conditional certification and notice are appropriate. Plaintiff has demonstrated that she and at least one other dancer are similarly situated. One additional plaintiff has opted-in, and Plaintiff alleges there are approximately forty

additional putative opt-in class members. (See Filing No. 1 at CM/ECF p. 6). I recommend the motion for conditional certification be granted.

     III.    Notice

The Court has reviewed the plaintiffs' proposed notice and opt-in consent forms and generally finds they are satisfactory[5].  In the notice, the court must respect judicial neutrality and avoid even the appearance of endorsing the action's merits. Hoffman-La Roche, 493 U.S. at 174. The defendants have raised no objections to the form of the notice.

The plaintiffs propose sending notice of the lawsuit to potential class members using mail, email, and text message and by posting the Notice on the premises of American Dream. This court has previously found that notice by text message, though somewhat invasive, is appropriate. (See Grove et al v. Meltech et al, 8:20-cv-193, Filing No. 85 at CM/ECF p. 13). One-time contact via mail, email, and text message is likely to be sufficient to notify potential opt-ins of the action. To effectuate the notices, the defendants should be ordered to provide to plaintiff the last known mailing addresses, email addresses, and cell phone numbers of individuals who currently work and/or previously worked at American Dream as exotic dancers at any time in the last three years[6] and were classified

---

[5] The proposed Notice Form contains one reference to "Club Omaha," a club associated with a different action in this district, rather than American Dream. (See Filing No. 17-1) The form should be corrected before it is distributed.

[6] Plaintiff asserts a three-year notice period is appropriate under the circumstances, and at the conditional certification stage. The statute of limitations under the FLSA is two years, but the period is extended to three years for willful violations. Other courts in this circuit have found that judicial economy is served by conditionally certifying a larger collective and applying the higher statute of limitations because it is not clear in the early stages of the case whether the alleged violation is willful. See Burch v. Qwest Communications, Int'l Inc., 500 F. Supp. 2d 1181, 1191. (D. Minn 2007).

as independent contractors. The defendant should also be ordered to conspicuously post the notice at American Dream.

IT IS RECOMMENDED to the Honorable Robert Rossiter, United States District Judge, pursuant to 28 U.S.C. § 636(b) that:

1)   Defendant Casey Rowe's Motion to Dismiss (Filing No. 11) be denied.

2)   Defendant Imagination Industries, Inc. d/b/a American Dream's Motion to Dismiss (Filing No. 12), be denied.

3)   Plaintiff's Motion for Conditional Class Certification of a Collective Action Pursuant to the Fair Labor Standards Act (Filing No 15), be granted, this action be certified as an FLSA collective action, consisting of:

   All exotic dancers who have worked at American Dream during the last three years and were classified as independent contractors.

4)   Within fourteen (14) days of entry of an order on this matter The defendants be required to produce, in an electronic format, the last known mailing addresses, email addresses, and cell phone numbers of individuals who currently work and/or previously worked at American Dream as exotic dancers at any time the three years prior to filing this case.

5)   The plaintiff be permitted to send the Notice form (Filing No. 17-1 at CM/ECF p. 2-3) and the opt-in consent form (Filing No. 17-2 at CM/ECF p. 2) to each potential class member, and Defendants should be required to circulate it to each potential class member who cannot be reached by mail, email or text message.

21

6)   Defendants allow Plaintiff to visibly post the notice sent to potential opt-ins on the premises of American Dream.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

Dated this 19th day of March, 2021.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge